AF Approval __*JMH*__                                Chief Approval __*MPF*__

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                          CASE NO. 6:24-cr-91-WWB-UAM

DIANDRE T. MENTOR

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Gregory W. Kehoe, United States Attorney for the Middle District of Florida,

and the defendant, DIANDRE T. MENTOR, and the defendant's attorney,

Alisia M. Adamson, mutually agree as follows:

A.  **Particularized Terms**

    1.  Count Pleading To

        The defendant shall enter a plea of guilty to Count One of the

Superseding Indictment. Count One charges the defendant with conspiracy to

defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371.

    2.  Maximum Penalties

        Count One carries a maximum sentence of five years'

imprisonment; a fine of $250,000, or twice the gross gain caused by the offense, or

twice the gross loss caused by the offense, whichever is greater; a term of

supervised release of not more than three years, and a special assessment of $100.

Defendant's Initials __*DM*__

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offense to which the defendant is pleading guilty.  The elements of Count One are:

> First:    two or more people in some way agreed to try to accomplish a shared and unlawful plan;
>
> Second:    the defendant knew the unlawful purpose of the plan and willfully joined in it;
>
> Third:    during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Indictment; and
>
> Fourth:    the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant in the Superseding Indictment, Counts Five through Seven, and the

Defendant's Initials _QU_                    2

counts in the original indictment filed against the defendant will be dismissed
pursuant to Fed. R. Crim. P. 11(c)(1)(A).

  5. <u>No Further Charges</u>

    If the Court accepts this plea agreement, the United States
Attorney's Office for the Middle District of Florida agrees not to charge defendant
with committing any other federal criminal offenses known to the United States
Attorney's Office at the time of the execution of this agreement, related to the
conduct giving rise to this plea agreement.

  6. <u>Guidelines Sentence</u>

    Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will
recommend to the Court that the defendant be sentenced within the defendant's
applicable guidelines range as determined by the Court pursuant to the United
States Sentencing Guidelines, as adjusted by any departure the United States has
agreed to recommend in this plea agreement.  The parties understand that such a
recommendation is not binding on the Court and that, if it is not accepted by this
Court, neither the United States nor the defendant will be allowed to withdraw
from the plea agreement, and the defendant will not be allowed to withdraw from
the plea of guilty.

Defendant's Initials _    _    3

7.    Acceptance of Responsibility – Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _D.M_                    4

8.    Restitution

Pursuant to 18 U.S.C. § 3663A and 18 U.S.C. § 3663(a) and (b), the defendant agrees to make full restitution to the Internal Revenue Service in the amount of $3,090,077.

a.    The defendant agrees the total amount of restitution reflected in this agreement results from her fraudulent conduct.

b.    The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

c.    If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The defendant also agrees to provide the above-described information to the probation office.

Defendant's Initials _DH_                    5

d.      If the defendant makes a payment of the restitution agreed to in this section prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to this section.

e.      The defendant agrees to send all payments made pursuant to the court's restitution order to the Clerk of the Court at the following address:

> 401 West Central Boulevard
> Orlando, Florida 32801

f.      With each payment to the Clerk of the Court made pursuant to the Court's restitution order, the defendant will provide the following information: (1) the defendant's name and Social Security number; (2) the Court and docket number assigned to this case; (3) the tax years or periods for which restitution has been ordered; and (4) a statement that the payment is being submitted pursuant to the Court's restitution order.

g.      The defendant agrees to include a request that the Clerk of the Court send the information, along with the defendant's payments, to the IRS address below:

> IRS   RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

Defendant's Initials _ΩM_                    6

h.     The defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> IRS – RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

**B.     Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to,

Defendant's Initials _ℓℳ_                    7

garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _Vu_                    8

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third

Defendant's Initials _iLl_                    9

parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant

Defendant's Initials _DM_                 10

further understands and acknowledges that any discussions between defendant or

defendant's attorney and the attorney or other agents for the government

regarding any recommendations by the government are not binding on the Court

and that, should any recommendations be rejected, defendant will not be

permitted to withdraw defendant's plea pursuant to this plea agreement. The

government expressly reserves the right to support and defend any decision that

the Court may make with regard to the defendant's sentence, whether or not such

decision is consistent with the government's recommendations contained herein.

    7.    Defendant's Waiver of Right to Appeal the Sentence

        The defendant agrees that this Court has jurisdiction and authority

to impose any sentence up to the statutory maximum and expressly waives the

right to appeal defendant's sentence on any ground, including the ground that the

Court erred in determining the applicable guidelines range pursuant to the United

States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range as determined by the Court pursuant to

the United States Sentencing Guidelines; (b) the ground that the sentence exceeds

the statutory maximum penalty; or (c) the ground that the sentence violates the

Eighth Amendment to the Constitution; provided, however, that if the

government exercises its right to appeal the sentence imposed, as authorized by

Defendant's Initials _D.M_           11

18 U.S.C. § 3742(b), then the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offenses to which defendant is pleading guilty

Defendant's Initials _Qu_                    12

and the elements thereof, including the penalties provided by law, and
defendant's complete satisfaction with the representation and advice received
from defendant's undersigned counsel (if any).  The defendant also understands
that defendant has the right to plead not guilty or to persist in that plea if it has
already been made, and that defendant has the right to be tried by a jury with the
assistance of counsel, the right to confront and cross-examine the witnesses
against defendant, the right against compulsory self-incrimination, and the right
to compulsory process for the attendance of witnesses to testify in defendant's
defense; but, by pleading guilty, defendant waives or gives up those rights and
there will be no trial.  The defendant further understands that if defendant pleads
guilty, the Court may ask defendant questions about the offense or offenses to
which defendant pleaded, and if defendant answers those questions under oath,
on the record, and in the presence of counsel (if any), defendant's answers may
later be used against defendant in a prosecution for perjury or false statement.
The defendant also understands that defendant will be adjudicated guilty of the
offenses to which defendant has pleaded and, if any of such offenses are felonies,
may thereby be deprived of certain rights, such as the right to vote, to hold public
office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _Du_                          13

11.     Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The
defendant certifies that defendant does hereby admit that the facts set forth in the
attached "Factual Basis," which is incorporated herein by reference, are true, and
were this case to go to trial, the United States would be able to prove those
specific facts and others beyond a reasonable doubt.

12.     Entire Agreement

This plea agreement, including Exhibit A, constitutes the entire
agreement between the government and the defendant with respect to the
aforementioned guilty plea and no other promises, agreements, or representations
exist or have been made to the defendant or defendant's attorney with regard to
such guilty plea.

Defendant's Initials _Q ll_                    14

13.     Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 12 day of April, 2025.

GREGORY W. KEHOE
United States Attorney

_____
DIANDRE T. MENTOR
Defendant

Sarah Megan Testerman
Sarah Megan Testerman
Assistant United States Attorney

_____
Aisia M. Adamson
Attorney for Defendant

Sarah Megan Testerman
FOR Michael L. Jones
Trial Attorney
U.S. DOJ, Tax Division

Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____                     15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:24-cr-91-WWB-UAM

DIANDRE T. MENTOR

## PERSONALIZATION OF ELEMENTS

### As to Count One:

1.     Do you admit that in the Middle District of Florida, from at least in or about January 2017 and continuing through at least in or about December 2019, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan?

2.     Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

3.     Do you admit that during the conspiracy, you knowingly engaged in at least one of the overt acts described in the Indictment?

4.     Do you admit that the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

Defendant's Initials _DM_                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                          CASE NO. 6:24-cr-91-WWB-UAM

DIANDRE T. MENTOR

## FACTUAL BASIS

Beginning no later than January 2017, and continuing until at least

December 2019, in the Middle District of Florida, the defendant, Diandre T.

MENTOR, knowingly and willfully conspired with Franklin L. Carter Jr.

("Carter"), Emmanuel M. Almonor ("Almonor"), Jonathan Carrillo ("Carrillo"),

Adon O. Hemley ("Hemley"), Isaiah J. Hayes ("Hayes"), Abryle Y. de la Cruz

("Cruz"), Kaylah Dacosta ("Dacosta"), and other individuals to defraud the

United States for the purpose of impeding, impairing, obstructing, and defeating

the lawful government functions of the U.S. Internal Revenue Service ("IRS") in

the ascertainment, computation, assessment, and collection of federal income

taxes. MENTOR and the other co-conspirators promoted and executed a scheme

to unlawfully enrich themselves and others by making false claims to the IRS for

tax refunds.

Defendant's Initials _DM_                  17

Specifically, MENTOR and his co-conspirators prepared and filed, and caused to be prepared and filed, false and fraudulent U.S. Individual Income Tax Returns ("Forms 1040"), Schedule A forms, and Schedule C forms. The Schedule A forms falsely claimed, among other items, unreimbursed employee expenses, other taxes, and gifts to charity. The Schedule C forms falsely claimed, among other items, business income, business expenses, and business losses. The falsely claimed items in turn falsely reduced the taxpayers' stated income and enabled them to receive increased refunds to which they were not entitled. Because of the excessive tax refunds the members of the conspiracy obtained for taxpayers, they were able to charge high fees to the taxpayers that unjustly enriched the members of the conspiracy.

Between about January 2017 and 2019, MENTOR worked for a tax preparation company owned and operated by Carter, Almonor, and Carrillo named Neighborhood Advance Tax, LLC ("NAT"). During this time, Carter, Almonor, Carrillo, MENTOR, and other conspirators held periodic training sessions at which they taught other NAT employees how to prepare fraudulent tax returns. Specifically, these trainings taught MENTOR and other NAT employees to falsify items on Schedule A and Schedule C forms in order to maximize each taxpayer's return. The trainings taught MENTOR and other

Defendant's Initials _____        18

NAT employees that by obtaining higher returns for taxpayers, they could then charge higher fees of up to $999 per return, of which fees MENTOR and other NAT tax preparers received a set percentage (often 15%). The trainings further instructed MENTOR and other NAT employees to, among other things, intentionally use non-even numbers on the tax returns when falsifying amounts so that the claimed amounts appeared more legitimate.

MENTOR began preparing tax returns in 2017. While working at NAT, MENTOR falsified information in Schedule A and Schedule C forms for dozens of tax returns to fraudulently maximize taxpayers' refunds. In 2018 and 2019, MENTOR was a manager of a NAT office in Orlando. While manager of this office, MENTOR continued to prepare and file fraudulent tax returns on taxpayers' behalf and oversaw the returns prepared at his office. The total tax loss for which MENTOR was responsible while he was working for NAT was $942,535.

Some of the fraudulent tax returns that MENTOR filed while working for NAT were the following, which included material statements concerning itemized deductions (from Schedule A) that MENTOR knew were false:

Defendant's Initials _DM_          19

| Date Filed | Taxpayer | Tax Year and Form | Amount of Schedule A Itemized Deductions Reported | Tax Loss to IRS Resulting from Return |
|---|---|---|---|---|
| 2/22/2018 | B.L. | 2017 Form 1040 | $26,500 | $5,037 |
| 1/25/2019 | B.L. | 2018 Form 1040 | $31,010 | $4,191 |
| 1/31/2019 | R.B. | 2018 Form 1040 | $19,626 | $764 |

In 2020, MENTOR and Hemley started their own tax preparation business, Smart Tax & Finance ("STF"), in Miami, Florida. In 2020, MENTOR and Hemley owned one tax office in South Florida where they prepared false returns and trained their employees to prepare fraudulent tax returns for clients similar to the fraudulent Schedule A deductions claimed by NAT. Once Almonor became involved in STF, they sold a number of STF franchises throughout Central Florida. In 2021, STF expanded to 12 locations throughout South and Central Florida, and Almonor, MENTOR, and Hemley trained STF franchise owners and employees to prepare false returns for clients with false Schedule Cs. The total tax loss for which MENTOR was responsible while working for STF was $2,147,542.

In sum, the total tax loss for which MENTOR is responsible, including both the NAT conspiracy and the STF relevant conduct, is $3,090,077.

Defendant's Initials _____ 20

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials  _͟𝟎͟ 𝜇͟_          21